CASE UNSEALED PER ORDER OF COURT

SEALED




LAURA E. DUFFY
United States Attorney
AMIE D. ROONEY
Assistant U.S. Attorney
California State Bar No. 215324
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7996

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. VICTORY PHARMA, INC., Defendant. | Case No. '12 CR 3040 W<br><br>DEFERRED PROSECUTION AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Laura E. Duffy, United States Attorney, and Amie D. Rooney, Assistant United States Attorney (the "Government"), and defendant, VICTORY PHARMA, INC. ("VPI"), pursuant to the authority granted by VPI's Board of Directors with the advice and consent of Jonathan L. Diesenhaus, Virginia A. Gibson, and Megan Dixon, Hogan Lovells US, LLP, counsel for VPI, that the parties will enter into this Deferred Prosecution Agreement ("the Agreement"). The terms and conditions of this agreement are set forth below:

////

////

////

////

////

5 ds

I

**DEFERRED PROSECUTION AGREEMENT**

A. VPI agrees to waive Indictment and accept and acknowledge that the Government will file a five-count criminal Information in the United States District Court for the Southern District of California ("the Information"), charging VPI with:

> knowingly and willfully causing to be offered remuneration, directly and indirectly, overtly and covertly, in cash and in kind, to physicians and other health care professionals to induce those prescribing medical professionals to prescribe VPI's drugs for their patients, including their patients covered by federal health care programs, for which payments for prescriptions would be made in whole or in part by federal health care programs, all in violation of Title 42, United States Code, Section 1320a-7b.

B. VPI further agrees to waive any objection with respect to venue, and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Southern District of California.

C. This deferred prosecution is part of a "global" settlement. VPI simultaneously is entering into a civil settlement agreement with the United States Department of Justice, Civil Division, resolving the existing civil and administrative monetary claims against VPI for the conduct described in the Information and other conduct investigated by the Civil Division.

D. VPI admits, accepts and acknowledges that it is responsible for the acts of its employees, directors, officers, subsidiaries and agents as set forth in the Statement of Facts attached hereto as Attachment A and incorporated by reference into this Agreement, and that the facts described in Attachment A are true and accurate. Should the Government initiate the prosecution that is deferred by this Agreement, VPI agrees that it will neither contest the admissibility of, nor contradict, in any such proceeding, the Statement of Facts.

E. It appears that the interests of the Government, VPI's interests, and the interests of justice will be served by deferring prosecution of these offenses for a period of twelve (12) months from the filing of this Agreement, provided VPI complies with all the terms and conditions of the Agreement. Upon VPI's compliance with the terms and conditions of this Agreement, and upon request of VPI, at the conclusion of this 12-month period, the Government will abandon prosecution of this matter and move to dismiss the charges in the pending Information. However, should VPI violate the conditions of this

Agreement during the period of deferred prosecution, the Government may proceed with prosecution.

F. The Government enters into this Agreement based on the individual facts and circumstances presented by this case and VPI. Among the facts considered were that VPI: (a) cooperated in the government's investigation of this matter; (b) voluntarily terminated the practices that led to the conduct at issue; (c) undertook substantial remedial measures, including the appointment of a compliance officer, establishment of a compliance committee, adoption and implementation of enhanced compliance policies, procedures and a code of interaction with health care professionals consistent with industry standards, and enhanced training and monitoring of its sales force; and (d) agreed to cooperate with the Government to resolve all other matters, civil and administrative, arising from the subject conduct and violations of the Anti-Kickback Statute. In deciding to enter into this Agreement, the Government also considered the fact that there were no allegations of patient harm or that the conduct at issue adversely affected patient care.

G. VPI shall continue to cooperate with the Government. At the request of the Government, and consistent with applicable law and regulation, VPI shall also continue to cooperate fully with such other law enforcement authorities and agencies in any investigation of VPI or any of its former officers, employees, agents, consultants, contractors, subcontractors, and subsidiaries, or any other party, in any and all matters relating to violations of the Anti-Kickback Statute and other improper sales and marketing practices. VPI agrees that its cooperation shall include, but is not limited to, the following:

1. VPI shall truthfully disclose all factual information that is not protected by a valid claim of attorney-client privilege or work product doctrine, with respect to its activities and those of its former officers, employees, agents, consultants, contractors, subcontractors, and subsidiaries, concerning all matters related to violations of the Anti-Kickback Statute and other improper sales and marketing practices, about which VPI has any knowledge and about which the Government may inquire. This obligation of truthful disclosure includes the obligation of VPI to use its best efforts to provide the Government, upon request, any document, record or other tangible evidence relating to such violations of the Anti-Kickback Statute or other improper sales and marketing practices about which the Government may

inquire of VPI.

2. Upon request of the Government, with respect to any issue relevant to its investigation of violations of the Anti-Kickback Statute or other improper sales and marketing practices in connection with the operations of VPI, VPI shall use its best efforts to designate knowledgeable employees, agents or attorneys to provide the Government the information and materials described in paragraph G(1), above, on behalf of VPI. It is further understood that VPI must at all times provide complete, truthful and accurate information.

3. With respect to any issue relevant to the Government's investigation of violations of the Anti-Kickback Statute or other improper sales and marketing practices in connection with the operations of VPI, VPI shall use its best efforts to make available for interviews or testimony, as requested by the Government, present or former directors, officers, employees, agents and consultants of contractors and subcontractors. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with federal law enforcement authorities. Cooperation under this paragraph will include identification of witnesses who, to VPI's knowledge, may have material information regarding the matters under investigation.

4. With respect to any information, testimony, documents, records or other tangible evidence provided to the Government pursuant to this Agreement, VPI consents to any and all disclosures consistent with applicable law and regulation to other governmental authorities of such materials as the Government, in its sole discretion, shall deem appropriate. The Government agrees to notify VPI of its intent to make such disclosure.

H. VPI has represented, and the Government acknowledges, that the directors and stockholders of VPI previously approved a Plan of Complete Liquidation and Dissolution and that VPI intends to liquidate and dissolve VPI consistent with such Plan of Complete Liquidation and Dissolution and applicable Delaware corporate law. Such liquidation and dissolution shall not constitute a breach of this Agreement.

## II

## MONETARY PENALTY

The Government and VPI agree that an application of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

A. The 2009 USSG are applicable to this matter.

B. Offense Level. The total offense level is 20, calculated as follows:

| | | |
|---|---|---|
| (1) | Base Offense Level [USSG §2B1.1] | 6 |
| (2) | Amount of illegal payments more than $400,000 and less than $1 million[1] [USSG §2B1.1(b)(1)(H)] | +14 |
| | TOTAL | 20 |

C. Base Fine. Based upon USSG §8C2.4(a)(1), the base fine is $650,000 (fine corresponding to the Adjusted Offense level as provided in Offense Level Table);

D. Culpability Score. Based upon USSG §8C2.5, the culpability score is 6, calculated as follows:

| | | |
|---|---|---|
| (1) | Base Culpability Score | 5 |
| (2) | The organization had 200 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense [USSG §8C2.5(b)(3)] | +3 |
| (3) | The organization fully cooperated in the investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct [USSG §8C2.5(g)] | -2 |
| | TOTAL | 6 |

E. Calculation of Fine Range.

| | |
|---|---|
| Base Fine | $650,000 |
| Multipliers | 1.2(min)/2.4(max) |
| Fine Range | $780,000/$1,560,000 |

[1] VPI acknowledges and agrees that the amount used to calculate the offense level is the minimum the Government could demonstrate at trial. Should VPI breach this Agreement and the matter proceeds to trial, the Government would be free to obtain and present additional evidence that may increase the specific offense level.

F. Forfeiture/Fine/Monetary Penalty.

VPI agrees that within five (5) business days of the filing of this Agreement, VPI will voluntarily deposit with the United States Marshal's Service, Southern District of California, the amount of $1,400,000, to be administratively forfeited to the investigating agency in this case (the Federal Bureau of Investigation). The forfeiture of these funds is final, and shall not be refunded.

Nothing in this Agreement precludes the Government from arguing in any future prosecution that the Court should impose a higher fine; although the Government agrees that under the circumstances, it will recommend to the Court that the amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment.

VPI also agrees to waive any rights it may have under Title 18, United States Code, Section 983 regarding the administrative forfeiture or civil judicial forfeiture of the above amount. Defendant withdraws and agrees not to file a Statement of Interest, Answer, Claim, or Petition for Remission or Mitigation for such amount in any administrative or judicial proceeding that may be initiated or that have been initiated.

Defendant further understands that, if for any reason this Deferred Prosecution Agreement is withdrawn, VPI's agreement to forfeit the above amount is unaffected and this amount will be administratively or judicially forfeited. Finally, VPI acknowledges that no tax deduction may be sought in connection with the payment of any part of this $1,400,000.

## III

## CONDITIONAL RELEASE FROM CRIMINAL LIABILITY

In return for the full and truthful cooperation of VPI as described above, and its compliance with the terms and conditions of this Agreement, the Government agrees not to use any information related to the conduct described in the Attachment A: Statement of Facts against VPI in any criminal proceeding in the Southern District of California, except: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code (Internal Revenue Code). In addition, the Government

agrees, except as provided herein, that it will not bring any criminal case in the Southern District of California against VPI, any of its wholly owned or controlled subsidiaries, or any of its current or former directors, officers, or employees related to the conduct described in the Attachment A: Statement of Facts, or relating to information VPI disclosed to the Government prior to the date on which this Agreement was signed.

This section does not provide any protection against prosecution for any future violations of the Anti-Kickback Statute or other future improper sales and marketing practices, if any, by VPI, or by any of its directors, officers, employees, agents, consultants, contractors, subcontractors, and subsidiaries irrespective of whether disclosed by VPI pursuant to the terms of this Agreement.

## IV

## DEFERRED PROSECUTION

In consideration of (a) the past and future cooperation of VPI described above; and (b) VPI's forfeiture of $1,400,000, the Government agrees that any prosecution of VPI for the conduct set forth in Attachment A: Statement of Facts be and hereby is deferred for the Term of this Agreement.

The Government further agrees that if VPI fully complies with all of its obligations under this Agreement, the Government will not continue the criminal prosecution against VPI described in Section I, and within 30 days after expiration of the 12-month term, the Government agrees to seek dismissal of the Information described in Section I.

## V

## WAIVER OF SPEEDY TRIAL RIGHTS

VPI waives any right to a speedy trial of the offense alleged in this case arising under the Constitution or laws of the United States. Defendant stipulates that all time between the filing of this Agreement and any re-institution of prosecution of Defendant as contemplated under this Agreement shall be excluded from any computations under the Speedy Trial Act pursuant to the provisions of Title 18, United States Code, Section 3161(h)(2)

VI

**BREACH OF THE DEFERRED PROSECUTION AGREEMENT**

VPI acknowledges, understands and agrees that if VPI violates or fails to perform any of its obligations under this Agreement, such violation or failure to perform may constitute a material breach of this Agreement.

If, during the Term of this Agreement, the Government determines, in its sole discretion, that VPI has committed any felony under federal law subsequent to the signing of this Agreement, has at any time provided deliberately false, deliberately incomplete or deliberately misleading information, or has otherwise breached the Agreement, VPI shall thereafter be subject to prosecution for any federal criminal violation of which the Government has knowledge. Any such prosecution may be premised on information provided by VPI. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against VPI notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the 12-month term. Thus, by signing this Agreement, VPI agrees that the statute of limitations with respect to any prosecution that is not time-barred on the date of this Agreement shall be tolled for the term of the Agreement.

In the event that the Government determines that VPI has breached this Agreement, the Government agrees to provide VPI with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, VPI shall have the opportunity to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions VPI has taken to address and remediate the situation, which explanation the Government shall consider in determining whether to institute a prosecution.

In the event that the Government determines that VPI has breached this Agreement: (a) all statements made by or on behalf of VPI to the Government or to the Court, including the Attachment A: Statement of Facts, and any testimony given by any representative or agent of VPI before any grand jury or any tribunal, at any legislative hearings, whether prior or subsequent to this Agreement, or any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Government against VPI; and (b) VPI shall not assert any claim under the

United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence or any other federal rule, that statements made by or on behalf of VPI prior or subsequent to this Agreement, and any leads derived therefrom, should be suppressed. This includes the prosecution of the charges that are the subject of this Agreement or any charges that the Government agreed to dismiss or not file as part of this Agreement, but later pursues because of a material breach by the Defendant. The decision whether conduct or statements of any individual will be imputed to VPI for the purpose of determining whether VPI has violated any provision of this Agreement shall be in the sole discretion of the Government.

VPI acknowledges that the Government has made no representations, assurances or promises concerning what sentence may be imposed by the Court if VPI breaches this Agreement and this matter proceeds to judgment. VPI further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

## VII

## PUBLIC STATEMENTS BY VPI

VPI expressly agrees that it shall not, through present or future attorneys, directors, officers, employees, agents or any other person authorized to speak for VPI, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by VPI set forth above or the facts described in Attachment A: Statement of Facts. Any such contradictory statement shall, subject to cure rights of VPI described below, constitute a breach of this Agreement and VPI thereafter shall be subject to prosecution as set forth in Section VI of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to VPI for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Government. If the Government determines that a public statement by any such person contradicts, in whole or in part, a statement contained in Attachment A: Statement of Facts, the Government shall so notify VPI, and VPI may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification. Consistent with the obligations of VPI as set forth above, VPI shall be permitted to raise defenses and to assert affirmative claims in civil and regulatory

proceedings relating to the matters set forth in Attachment A: Statement of Facts. This Section does not apply to any statement made by any present or former employee of VPI in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of VPI.

VPI agrees that if it or any of its direct or indirect affiliates issues a press release in connection with this Agreement, VPI shall first consult the Government to determine whether (a) the text of the release is true and accurate with respect to matters between the Government and VPI; and (b) the Government has no objection to the release. Statements at any press conference concerning this matter shall be consistent with this press release.

**VIII**

**LIMITATIONS ON BINDING EFFECT OF AGREEMENT**

This Agreement is binding on VPI and the United States Attorney's Office for the Southern District of California, but specifically does not bind any other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although, if requested to do so by VPI, the United States Attorney's Office will bring this Agreement, the United States Department of Justice Petite Policy, the cooperation of VPI and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities.

**IX**

**NOTICE**

Any notice to the Government under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, in each case, for the United States Attorney's Office, addressed to Amie D. Rooney (or her successor), Assistant U.S. Attorney, U.S. Attorney's Office for the Southern District of California, 880 Front Street, Room 6293, San Diego, CA 92101, and for Victory Pharma, Inc., addressed to Megan Dixon, Esq., Hogan Lovells US LLP, 3 Embarcadero Center, San Francisco, California 94111. Notice shall be effective upon actual receipt by VPI.

X

**ENTIRE AGREEMENT**

This deferred prosecution agreement and its attachments embody the entire agreement between the parties and supersede any other agreement, written or oral.

XI

**MODIFICATION OF AGREEMENT MUST BE IN WRITING**

No modification of this deferred prosecution agreement shall be effective unless in writing signed by all parties.

**FOR PLAINTIFF:**

LAURA E. DUFFY
United States Attorney

7/25/2012
DATED

AMIE D. ROONEY
Assistant U.S. Attorney

**FOR DEFENDANT:**

July 17, 2012
DATED

JONATHAN L. DIESENHAUS
VIRGINIA A. GIBSON
MEGAN DIXON,
Hogan Lovells, US, LLP
Counsel for VPI

VICTORY PHARMA, INC.

July 17, 2012
DATED

By
James W. Newman, Chairman

#3

## CORPORATE REPRESENTATIVE'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Victory Pharma, Inc. ("VPI"). I understand the terms of this Agreement and voluntarily agree, on behalf of VPI, to each of its terms. Before signing this Agreement, I consulted outside counsel for VPI. Counsel fully advised me of the rights of VPI, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of VPI. I have advised and caused outside counsel for VPI to advise the Board fully of the rights of VPI, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of VPI, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the authorized representative for Victory Pharma, Inc., and that I have been duly authorized by VPI to execute this Agreement on behalf of VPI.

VICTORY PHARMA, INC.

July 17, 2012
DATED

By [signature]
James W. Newman, Chairman

**ATTACHMENT A**

**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement (the "Agreement") between the United States Attorney's Office for the Southern District of California (the "Government"), and Victory Pharma, Inc. ("VPI"), and the parties hereby agree and stipulate that the following information is true and accurate. As set forth in Section I at paragraph D of the Agreement, VPI admits, accepts, and acknowledges that it is responsible for the acts of its subsidiaries, employees, and agents as set forth below.

Should the Government initiate the prosecution that is deferred by the Agreement, VPI agrees that it will neither contest the admissibility of, nor contradict the following Statement of Facts in any proceeding brought by the U.S. Attorney's Office for the Southern District of California:

**Background**

1. VPI is a Delaware corporation, headquartered in San Diego, California, that acquired, licensed, marketed and developed prescription pharmaceutical products, including products approved for the treatment of pain and related conditions.

2. Among the pharmaceutical products VPI marketed were Naprelan 375, Xodol, and Fexmid.

3. In general, because its products required a health care professional's prescription, VPI's business and marketing strategy involved identifying and targeting leading prescribing health care professionals in specialties such as orthopedics, sports medicine and internal medicine.

4. VPI employed its own sales force that called on, and promoted VPI's pharmaceutical products to, health care professionals. Between October 2006 and December 2007, in anticipation of its acquisition of rights to produce and promote Naprelan, VPI rapidly hired a number of employees to serve as its sales force.

5. VPI processed and paid expense reimbursements for its sales representatives at its corporate headquarters in San Diego, California.

**VPI Sales Force**

6. VPI's sales force consisted of various regional sales managers who supervised numerous "territory managers," or sales representatives. Territory managers interacted directly with the health care professionals. During the relevant time period, regional sales managers reported initially to

VPI's Vice President for Sales and later to two area sales managers. Many of VPI's sales representatives had little or no prior experience in pharmaceutical sales.

7. The primary job of the sales force was to maximize the number of prescriptions being written for VPI's drugs by health care professionals so that pharmaceutical wholesalers and retailers would acquire the products from VPI, and thereby maximize revenues earned by VPI. Funds paid to VPI by wholesalers for its products came, in part, from money supplied by federal health care programs, which reimbursed retailers for drugs being prescribed by health care professionals.

8. Among the resources VPI made available to assist the sales force in performing its job were budgeted marketing funds available for meals and entertainment, sampling, journal advertisements, coupons, vouchers, and "regional opportunity funds" for preceptorships and speaker fees.

9. VPI was not and is not a member of the Pharmaceutical Researchers and Manufacturers Association ("PhRMA"). PhRMA is a trade organization made up primarily of the world's largest pharmaceutical manufacturers. Among other things, PhRMA companies have agreed to and adopted a voluntary code generally governing the interactions of sales forces and health care professionals who prescribe their products. VPI did not adopt all relevant provisions of the PhRMA Code on Interactions with Healthcare Professionals until approximately July 2009.

10. Prior to the deployment of its sales force in late 2006, VPI adopted its own Code of Conduct: Promotional Interactions with Health Care Professionals, which was modified and "loosen[ed] up" from earlier drafts, to permit activity by sales representatives that, if undertaken with improper intent, would violate the Anti-Kickback Statute.

11. Until late 2009, VPI did not designate an employee to serve as a compliance officer to monitor compliance with the Anti-Kickback Statute; nor did VPI retain an outside attorney or consultant for that purpose.

12. VPI sales managers provided minimal training to its sales representatives on the Anti-Kickback Statute and its own Code of Conduct.

**<u>VPI's Improper Sales and Marketing Practices</u>**

13. Some VPI sales managers designated certain physicians as "super target" doctors based on the likelihood of their prescribing VPI drugs, and once identified, one sales manager instructed his direct reports "to throw the kitchen sink at the practice by spoiling the office and doctor over and over again." Consistent with that strategy, one sales manager told his sales reps by email, "Super targets need

more of your time and resources."

14. Some VPI sales managers routinely encouraged sales staff to utilize "out of office events," including theater tickets, spa days, professional sporting events, golf and ski outings, and restaurant dinners to gain "access" to these "super targets."

15. Some VPI sales managers closely monitored the "return on investment" (ROI), that is, whether the money and resources spent on health care professionals, actually resulted in health care professionals writing more prescriptions for VPI drugs.

16. Monitoring "ROI" allowed VPI's sales managers to allocate additional entertainment funds to those sales reps that were achieving the highest sales numbers.

17. Some VPI sales managers also encouraged sales representatives to schedule "preceptorships" with healthcare practitioners, which involved "shadowing" a doctor in his or her office for a day or half a day, including with patient and physician consent, attending physician-patient consultations. In exchange, the doctor generally would be paid between $150 and $500. Although a preceptorship provided an opportunity for the sales representative to learn more about a particular specialty or doctor, some VPI sales representatives saw preceptorships as an opportunity to influence a healthcare practitioner's prescribing patterns. For example, in March 2009, one sales representative emailed his manager that he "plan[ned] to schedule more preceptorships with [the same doctor] in hopes that he will make writing Naprelan a habit." VPI terminated the practice of paid preceptorships in July 2009.

**Examples of Improper Payments**

18. In keeping with VPI's accepted sales practices, on January 31, 2008, a VPI sales rep paid $834.02 for ski lift tickets for several people at Stratton Mountain, New York, including doctors G.M. and F.M. The sales rep submitted an expense report with this charge to VPI in San Diego and the sales rep was reimbursed for the full cost by VPI.

19. On March 18, 2008, a VPI sales rep paid $780 for tickets to a New Orleans Hornets NBA game for several people including Drs. J.K., M.G., M.J., L.S., and R.B. The sales rep submitted an expense report with this charge to VPI in San Diego and the sales rep was reimbursed for the full cost by VPI.

20. On June 20, 2008, a VPI sales rep paid $500 for tickets to a New York Yankees MLB game for herself and Drs. J.S. and N.S. The sales rep submitted an expense report with this charge to VPI in San Diego and the sales rep was reimbursed by VPI for the full cost.

21. On September 26, 2008, a VPI sales rep paid $488 for Broadway theater tickets for Drs. R.S. and R.K. The sales rep submitted an expense report with this charge to VPI in San Diego and the sales rep was reimbursed by VPI for the full cost.

22. On November 14, 2008, a VPI sales rep paid $755 for dinner at Valbella Steakhouse for several people including Drs. T.K. and R.S. The sales rep submitted an expense report for this charge to VPI in San Diego and the sales rep was reimbursed by VPI for the full cost.

23. Between November 2007 and June 2009, VPI's sales force spent at least $400,000 on providing benefits to doctors and their staffs as a means, at least in part, of inducing those doctors to write prescriptions for VPI products.

24. VPI, acting through the collective knowledge of certain of its employees, provided these and other benefits to obtain access to health care professionals and for a purpose of inducing health care professionals to prescribe VPI's drugs for their patients, including patients covered by federal health care programs, for which payments for prescriptions would be made in whole or in part by federal health care programs.